# EXHIBIT 1

## TEAMING AGREEMENT

This Teaming Agreement ("Agreement") is entered into this *8th* day of *March*, 2010 but effective for all purposes as of *October 14th 2009* 2010 (the "Effective Date") by and between Winston Company, Inc., an Oklahoma corporation ("Winston") and Redman and Associates, LLC, an Arkansas limited liability company ("Redman").

### RECITALS

A.   Winston and Redman are interested in teaming together to provide for the distribution of certain products as more fully set forth herein (the "Venture").

B.   In connection with the development of the Venture, Winston will establish a division of Winston to be known as "Winston International Mfg." ("Winston INTL").

C.   Winston will also be creating a China-based company known as "Winston Trade Ningbo" ("Winston China"); however, the parties acknowledge that Winston China's operations will include business in addition to (and thus unrelated to) the Venture.

D.   This Agreement codifies the agreements and understandings of the parties relating to the Venture.

Now Therefore, in consideration of the mutual promises, conditions and covenants herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.   **Recitals Incorporated.** The recitals are incorporated herein as if fully set forth in the body of this Agreement.

2.   **Venture Purpose.** The purpose of the Venture is to purchase certain products as described herein, primarily in the United States and distribute those products primarily in the United States. Distribution of the products may include sales to Wal-Mart stores utilizing Winston's existing vendor number as previously approved by Wal-Mart. The products to be included within the Venture are as set forth on **Exhibit "A"** attached hereto (the "Products"). Additional products may be added to this Agreement during the term hereof by mutual written agreement of the parties.

3.   **Responsibilities of the Parties.** The responsibilities of each party to the Venture shall initially consist of the following (such responsibilities may be expanded or modified from time to time by written agreement of the parties):

   a.   Redman's initial responsibilities include:

      (i)   managing and maintaining the sales and supply chain for the Products and Winston INTL's relationships with Wal-Mart, including, without limitation, the sales, supply chain management, trafficking, replenishment and customer services, and

1

EXHIBIT

1

   (ii)   assisting Winston INTL and Winston in licensing and other agreement with various establishments such as Disney, Marvel, and Golden Wheel America for the Products,

 b.  Winston's initial responsibilities include:

   (i)   creation of the Winston INTL division and Winston China,

   (ii)   developing the initial balance sheet, P&L Statement and budget for Winston INTL,

   (iii)   implementing the Venture,

   (iv)   providing access to the Wal-Mart approved vendor number for sales of the Products by Winston INTL to Wal-Mart,

   (v)   obtaining bank accounts and financing for the Venture's operations in amounts deemed appropriate in Winston's sole discretion,

   (vi)   coordinating the sourcing and purchase of Products either directly from manufacturers thereof or through Winston China,

   (vii)   selling Products to Wal-Mart and other direct customers of Winston INTL, it being understood and agreed that all sales of the Products to Wal-Mart shall be made by Winston INTL for its account,

   (viii)   creating and producing periodic financial statements for Winston INTL consistent with the terms of this Agreement,

   (ix)   creating periodic budgets of Winston INTL consistent with the terms of this Agreement,

   (x)   determining the reserves necessary to reasonably protect Winston INTL from unexpected contingencies, or losses, or to provide support for planned growth or capital acquisitions needs of Winston INTL,

   (xi)   maintaining the books and records of Winston INTL,

   (xii)   obtaining the trade name for Winston INTL in Oklahoma, and

   (xiii)   conducting the day-to-day operations of Winston INTL.

  4.  **No Limitations.** Neither party shall be limited from conducting other businesses and selling other goods and services and neither shall have any liability or obligation to the other party hereto for such actions, provided however both parties agree not to directly or indirectly sell or participate in the purchase, sale or distribution of the Products during the term of this Agreement except through the Venture without the written consent of the other party hereto.

  5.  **Distributions.** As full compensation for Redman's performance of its services to the Venture as set forth in Section 3 above and any additional services it performs hereunder, Winston INTL shall pay Redman annually (on or about December 31) an amount equal to 50% of Winston INTL's

2

Distributable Net Profits Before Taxes (as herein defined) ("Distributions"). The Distributions may be made more frequently by mutual written agreement of both parties.  The term "Distributable Net Profits Before Taxes" as used herein shall mean gross revenues received by Winston INTL from sale of Products during the term of this Agreement (or following termination as otherwise provided herein), less (i) all costs and expenses relating to the purchase, handling, transporting, licensing, distribution, marketing or sale of the Products incurred directly or indirectly by Winston INTL, Winston or Winston China, including, returns, refunds, discounts, allowances, shipping, costs of goods and materials, international, federal, state and local taxes, import/export charges, duties or fees, warranty charges, repair or replacements costs, government imposed charges (including those imposed by China authorities), consulting fees, legal and accounting expenses, an allocable percentage of costs incurred by Winston or Winston China for the following: (a) rents, (b) products liability, general, employment practices, contractual and casualty insurance (c) utilities, (d) employee costs, all travel expenses of representatives of Winston INTL (including Neal Zahn), all interest and compliance costs associated with any lending arrangements of Winston INTL or provided by Winston or Winston China to support the Venture by Winston INTL, (ii) amounts maintained by Winston INTL as a reserve against (1) potential contingencies related to the Products or the Venture, (2) estimated bad debts related to the Products or the Venture, (3) other potential unknown liabilities of the Venture, (4) as budgeted for working capital needs, potential growth or capital acquisitions, all as determined by Winston in its reasonable and good faith estimation with periodic input from Redman.  The parties agree that no portion of any salary paid to Neal Zahn by Winston during the term of this Agreement shall be charged as an expense of Winston INTL.

6.    **Term**. This Agreement shall commence on the Effective Date and shall continue until:

   a.    Mel Redman dies or becomes disabled and is unable to consistently personally assist in the performance of Redman's responsibilities hereunder;

   b.    either party breaches any obligation of such party under this Agreement and such breach is not cured by the defaulting party within thirty (30) days following receipt of notice of breach by the other party; provided, however, that if any non-monetary breach reasonably cannot be cured within such thirty (30) day-period, the same shall be deemed to have been timely cured if breaching party commences reasonably appropriate curative action within such thirty (30) day-period and diligently prosecutes same to completion thereafter;

   c.    either party voluntarily files bankruptcy under any solvency protection laws of the United States or any State, becomes insolvent, or has any lien or insolvency proceeding filed against it which is not dismissed within thirty days;

   d.    either party ceases operations or closes its business operations;

   e.    by mutual written agreement of the parties; or

   f.    by either party upon 90-days advance written notice to the other party.

7.    **Actions on Termination**. The remedies, rights and obligations of the parties following any termination of this Agreement shall be as follows:

   a.    If this Agreement is terminated as provided in Section 6(b), the non-breaching party may terminate this Agreement by giving the breaching party five business days's written notice and shall be entitled to (i) seek the recovery of any damages suffered by the non-breaching party, including reasonable attorney fees and court

3

costs, and/or (ii) seek equitable or injunctive relief, as appropriate. If Redman is the breaching party, then Redman shall be paid all accrued and unpaid Distributions through the date of termination, and shall forfeit any future potential Distributions otherwise payable to Redman. This action shall be in addition to, and in not in lieu of, any other legal or equitable remedies available to Winston following such breach.

b.   If this Agreement is terminated as provided in Section 6(a), (c), (d), (e), or (f) then Winston shall cause Winston INTL to make Distributions to Redman following termination (in the same manner and following the same timing as otherwise provided in Section 5 respecting Distributions), (i) for sales of Products completed prior to termination, (ii) from revenues received from sales of Products in process at the date of termination but which are not completed and the revenues received until after termination, and (iii) from revenues received from new sales of Products following termination on any sales by Winston INTL occurring within three years following the date of termination. If this Agreement is terminated for any reason, or no reason at all, Winston shall have no obligation to continue to operate the Venture and Winston may, at its option, dissolve and liquidate Winston INTL or close the operation thereof; provided however, if after doing so, Winston elects to distribute Products through Winston or another entity ("Successor Entity"), then Redman shall be entitled to Distributions based on the Distributable Net Profits Before Taxes of the Successor Entity to the same extent as provided above and on the same terms as if the original Venture had remained in place but with the costs and expenses in determining the Distributable Net Profits Before Taxes then being the costs and expenses of the Successor Entity instead of Winston INTL.

8.   **Audit of books and records.** Redman, or its auditors, shall have the right, at Redman's expense, to access and/or audit the books and records of Winston INTL at any time during regular business hours following at least ten days advance written notice for purposes of verifying compliance with the terms of this Agreement, provided such access is not requested more frequently than twice annually.

9.   **Confidentiality.** Each of the parties (together with its subsidiaries and affiliates, the "Disclosing Party") may, during the term of the Agreement, disclose and reveal to the other party (together with its subsidiaries and affiliates, the "Receiving Party") certain "Confidential Information" (as herein defined). "Confidential Information" as used herein means all information, in whatever form, that the Disclosing Party delivers or discloses, whether before or after the date of this Agreement, to the Receiving Party, including, but not limited to, specifications, designs, plans, drawings, hardware, software, data, prototypes, processors, office automation products, communications products or services, business opportunities, product costs, personnel, research and development activities, marketing plans, know-how or other business and technical information, and all related notes, analyses, compilations, studies, specifications, designs, plans, enhancements, data, prototypes, derivative works and all other works prepared by the Receiving Party or any of its partners, directors, officers, employees, agents, contractors, affiliates, attorneys and other advisors or representatives (collectively, "Representatives") that contain or are generated from such information. The term "Confidential Information" as used herein shall only cover information as described above that (i) contains a stamp or mark reading "Proprietary Information" or "Confidential Information" or (ii) is transmitted verbally and is followed by a written statement within ten days thereafter indicating the same to be the proprietary or confidential information of the Disclosing Party.

4

Each party further agrees that it shall (i) only disclose such Confidential Information to those of its Representatives with a need to have access to and knowledge of the Confidential Information solely for the purpose expressly stated herein and not disclose to any other person except with the prior written approval of the Disclosing Party; (ii) advise any of its Representatives who receive the Confidential Information of the existence and terms of this Agreement and of the obligations of confidentiality and non-disclosure herein; cause its Representatives to comply with this Agreement as if they were parties hereto; and be responsible for any breach of this Agreement by its Representatives; (iii) use and require its Representatives to use at least the same degree of care to protect the Confidential Information as they use to protect its own proprietary information, which degree of care shall in no event be less than reasonable care; and (iv) use, and require its Representatives to use, the Confidential Information only for the promotion of the Venture and its operations.

Notwithstanding anything to the contrary herein, neither party hereto shall be obligated to preserve the confidentiality of any Confidential Information that (i) prior to any disclosure by the Disclosing Party was known by the Receiving Party, free of any known obligation to keep it confidential; (ii) is or becomes publicly available by other than unauthorized disclosure by the Receiving Party or any of its Representatives; (iii) can verifiably be shown to have been developed by the Receiving Party or its Representatives independently of any Confidential Information of the Disclosing Party; or (iv) is disclosed by a third party, which disclosure does not violate any confidential obligation. The Receiving Party may disclose the Confidential Information of the Disclosing Party pursuant to a valid order issued by a court or governmental agency, provided that the Receiving Party provides the Disclosing Party with (i) prior written notice of such obligation; and (ii) the opportunity to oppose such disclosure or obtain a protective order or similar relief.

10.   **Representations and Warranties of Winston.**  Winston (i) is incorporated under the laws of the State described in the opening paragraph of this Agreement, (ii) the person signing this Agreement on behalf of Winston has the authority to enter into this Agreement and to bind Winston to its terms, and (iii) the execution and delivery of this Agreement and the performance of its terms by Winston will not violate any law or any agreement to which it is a party.

11.   **Representations and Warranties of Redman.**  Redman (i) is organized under the laws of the State described in the opening paragraph of this Agreement, (ii) the person signing this Agreement on behalf of Redman has the authority to enter into this Agreement and to bind Redman to its terms, and (iii) the execution and delivery of this Agreement and the performance of its terms by Redman will not violate any law or any agreement to which it is a party.

12.   **Indemnification.**  Winston agrees to and hereby does indemnify and hold Redman, its directors, officers, shareholders, affiliates, agents, servants, and employees harmless against all claims, damages, losses, and expenses, including, without limitation, Redman's reasonable attorney fees arising out of and are caused in whole or in part by Winston's intentional, or negligent act or omission, or arising out of a breach of Winston's obligations, representations, warranties, responsibilities, covenants and promises herein contained. Redman agrees to and hereby does indemnify and hold Winston, its directors, officers, shareholders, affiliates, agents, servants, and employees harmless against all claims, damages, losses, and expenses, including, without limitation, Winston's reasonable attorney fees arising out of and are caused in whole or in part by Redman's intentional, or negligent act or omission, or arising out of a breach of Redman's obligations, representations, warranties, responsibilities, covenants and promises herein contained.  This Section 12 shall survive termination of the Agreement.

5

13.    **Authorizations.**  The only persons authorized to bind Winston INTL or Winston China to any legal obligation, contract, lease, agreement, or order with any third party or to bind the Venture to any obligation whatsoever shall be Neal Zahn, Henry Zahn or persons authorized, in writing, by either of them.

14.    **Successors and Assigns.**  This Agreement shall be binding upon the parties hereto and shall inure to the benefit of their respective successors and permitted assigns.

15.    **Assignability.**  No right or obligation arising hereunder may be assigned by either party hereto without the prior written consent of the other party which consent will not be unreasonably or untimely withheld.

16.    **Construction.**  All parties hereto acknowledge that each party was actively involved in the negotiation and drafting of this Agreement and that no law or rule of construction shall be raised or used in which the provisions of this Agreement shall be construed in favor of or against either party hereto solely because one is deemed to be the author thereof.

17.    **Headings.**  The section, subsection and paragraph headings throughout this Agreement are for convenience and reference only, and the words contained therein shall not be held to expand, modify, amplify or aid in the interpretation, construction or meaning of this Agreement.

18.    **Severability.**  If any provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions hereof shall continue to be fully effective.

19.    **Law Governing.**  This Agreement shall be construed and interpreted in accordance with and governed and enforced in all respects by the laws of the State of Oklahoma.

20.    **Entireties; Modification.**  This Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof and no modification of the provisions herein shall be effective unless reduced to writing and executed by each party hereto.

21.    **Legal Fees.**  If any legal proceeding is instituted to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover its costs, including reasonable attorney fees and expert witness fees, from the non-prevailing party.

22.    **Notices:**  All notices, requests, demands, waivers, consents and other communications hereunder shall be in writing, shall be delivered either in person, by facsimile or other electronic means, by overnight air courier or by mail, and shall be deemed to have been duly given and to have become effective (a) upon receipt if delivered in person or by facsimile or other electronic means calculated to arrive on any business day prior to 5:00 p.m. local time at the address of the addressee, or on the next succeeding business day if delivered on a non-business day or after 5:00 p.m. local time, (b) two business days after having been delivered to an air courier for overnight delivery or (c) seven business days after having been deposited in the mails as certified or registered mail, return receipt requested, all fees prepaid, directed to the parties or their permitted assignees at the addresses as set forth on the signature page of this Agreement.

23.    **Waiver.**  No waiver of any obligation, breach or default hereunder shall be considered valid unless in writing and signed by the party giving such waiver and no such waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature.

Winston Company, Inc.

By: _____

Name:  Neal Zahn

Title:   President

Info for Notices:

Winston Company, Inc.

Attn: Neal Zahn, President

7704 E. 38th Street

Tulsa, OK 74145

Fax: 918-610-1010

Email: nzahn@winstoncompany.com


Redman and Associates, LLC

By: _____

Name:  Mel Redman

Title:   Manager/President

Info for Notices:

Redman and Associates, LLC

Attn: Mel Redman, Manager/President

900 SE 5th Street Suite #18

Bentonville, Arkansas 72712

Fax: 479-271-6549

Email: mel@redmanandassociates.com

8

## EXHIBIT "A"

### Description of Products

1.      Quads

2.      Scooters

3.      Bicycles

c:\docume~1\jdrewyor\locals~1\temp\metasave\redman and associates - teaming agreement v2 (mwsgw).doc
f:\users\trd\winston\redman agreement\redman and associates - teaming agreement v2 (mwsgw).doc

1454524.2

# EXHIBIT 2



US00D666903S

(12) **United States Design Patent**
McIntosh et al.

(10) Patent No.: **US D666,903 S**
(45) Date of Patent: ** **Sep. 11, 2012**

(54) **DISPLAY BOX**

(75) Inventors: **John Ralph McIntosh**, Tulsa, OK (US); **Melvin C. Redman**, Bentonville, AR (US); **Neal Winston Zahn**, Bixby, OK (US)

(73) Assignee: **Winston Company, Inc.**, Tulsa, OK (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/393,623**

(22) Filed: **Jun. 7, 2011**

(51) LOC (9) Cl. ................................................ 09-03
(52) U.S. Cl. ............................ D9/418; D9/721; D9/430
(58) Field of Classification Search ................... D9/414, D9/418, 430, 431, 432, 433, 499, 721; D3/272; 206/223, 784, 1.5, 524.1, 525, 527; 229/100, 229/124, 125.37, 126, 800; D7/392, 397, D7/504, 601; 220/62, 890
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2,812,852 A | * | 11/1957 | Samuels | 206/768 |
| 2,844,295 A | * | 7/1958 | Williams | 206/525 |
| 3,987,893 A | * | 10/1976 | Hanson | 206/779 |
| D244,355 S | * | 5/1977 | Mazie et al. | D9/432 |
| D244,430 S | * | 5/1977 | Larkin | D9/432 |
| D246,440 S | * | 11/1977 | Hanson | D9/418 |
| D263,121 S | * | 2/1982 | Lowry | D9/432 |
| D294,805 S | * | 3/1988 | Boyer | D9/415 |
| D320,556 S | * | 10/1991 | Fairhurst | D9/414 |
| D406,478 S | * | 3/1999 | Rahman | D6/475 |
| 6,681,953 B2 | * | 1/2004 | Au | 220/815 |
| D535,193 S | * | 1/2007 | Rutledge | D9/721 |
| D575,149 S | * | 8/2008 | Baranowski | D9/432 |
| D622,140 S | * | 8/2010 | Elhalwani | D9/421 |
| D629,684 S | * | 12/2010 | Drury | D9/433 |

* cited by examiner

*Primary Examiner* — Thomas Johannes
(74) *Attorney, Agent, or Firm* — Fellers, Snider, Blankenship, Bailey & Tippens, P.C.

(57) **CLAIM**

The ornamental design for a display box, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of a display box showing my new design;
FIG. 2 is a front view thereof;
FIG. 3 is a back view thereof;
FIG. 4 is a right side view thereof;
FIG. 5 is a left side view thereof;
FIG. 6 is a top view thereof; and,
FIG. 7 is a bottom view thereof.
The broken line portion of the figure drawings is included to show unclaimed subject matter only and forms no part of the claimed design.

1 Claim, 5 Drawing Sheets



EXHIBIT
tabbies
2



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6

FIG. 7

# EXHIBIT 3





**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND
DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

JUNE 08, 2011

                            PTAS

JAMES F. LEA, III
321 S. BOSTON, SUITE 800
TULSA, OK 74103

*501558382*

           UNITED STATES PATENT AND TRADEMARK OFFICE
           NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT DIVISION OF
THE U.S. PATENT AND TRADEMARK OFFICE.  A COMPLETE MICROFILM COPY IS
AVAILABLE AT THE ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER
REFERENCED BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE.  THE
INFORMATION CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA
PRESENT IN THE PATENT AND TRADEMARK ASSIGNMENT SYSTEM.  IF YOU SHOULD
FIND ANY ERRORS OR HAVE QUESTIONS CONCERNING THIS NOTICE, YOU MAY
CONTACT THE EMPLOYEE WHOSE NAME APPEARS ON THIS NOTICE AT 571-272-3350.
PLEASE SEND REQUEST FOR CORRECTION TO: U.S. PATENT AND TRADEMARK OFFICE,
MAIL STOP: ASSIGNMENT SERVICES BRANCH, P.O. BOX 1450, ALEXANDRIA, VA 22313.


RECORDATION DATE: 06/08/2011        REEL/FRAME: 026409/0302
                                    NUMBER OF PAGES: 3

BRIEF: ASSIGNMENT OF ASSIGNOR'S INTEREST (SEE DOCUMENT FOR DETAILS).
DOCKET NUMBER: W2725-71927

ASSIGNOR:
   MCINTOSH, JOHN RALPH          DOC DATE: 06/06/2011

ASSIGNOR:
   REDMAN, MELVIN C.             DOC DATE: 06/06/2011

ASSIGNOR:
   ZAHN, NEAL WINSTON            DOC DATE: 06/06/2011

ASSIGNEE:
   WINSTON COMPANY, INC.
   7704 EAST 38TH STREET
   TULSA, OKLAHOMA 74145

EXHIBIT
3

```
026409/0302 PAGE 2

APPLICATION NUMBER: 29393623        FILING DATE:
PATENT NUMBER:                      ISSUE DATE:
TITLE: DISPLAY BOX DESIGN


ASSIGNMENT SERVICES BRANCH
PUBLIC RECORDS DIVISION
```

## PATENT ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

**06/08/2011**
**501558382**

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | ASSIGNMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
|---|---|
| JOHN RALPH McINTOSH | 06/06/2011 |
| MELVIN C. REDMAN | 06/06/2011 |
| NEAL WINSTON ZAHN | 06/06/2011 |

### RECEIVING PARTY DATA

| | |
|---|---|
| Name: | WINSTON COMPANY, INC. |
| Street Address: | 7704 East 38th Street |
| City: | Tulsa |
| State/Country: | OKLAHOMA |
| Postal Code: | 74145 |

### PROPERTY NUMBERS Total: 1

| Property Type | Number |
|---|---|
| Application Number: | 29393623 |

### CORRESPONDENCE DATA

Fax Number:        (918)583-9659
*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*
Phone:            918-599-0621
Email:            sjenkins@fellerssnider.com
Correspondent Name:   James F. Lea, III
Address Line 1:      321 S. Boston, Suite 800
Address Line 4:      Tulsa, OKLAHOMA 74103

| ATTORNEY DOCKET NUMBER: | W2725-71927 |
|---|---|
| NAME OF SUBMITTER: | James F. Lea, III |

Total Attachments: 2
source=Assignment#page1.tif
source=Assignment#page2.tif

PATENT
Dkt. No. 71927/11-031
Assignment
Page 1 of 2

## ASSIGNMENT

WHEREAS, JOHN RALPH McINTOSH, whose address is 3447 E. 76th Street, Tulsa, Oklahoma 74136; MELVIN C. REDMAN, whose address is 1108 Northeast Thorn Hill Road, Bentonville, Arkansas 72721; and NEAL WINSTON ZAHN, whose address is 11713 S. 66th E. Ave., Bixby, Oklahoma 74008 (hereinafter referred to as "ASSIGNORS") are coinventors of a certain new and useful invention entitled "DISPLAY BOX DESIGN" which is described and claimed in the United States design patent application filed  June 7 _____, 2011, and assigned Application Serial No. 29/393,623 _____; and

WHEREAS, WINSTON COMPANY, INC., an Oklahoma corporation located at 7704 East 38th Street, Tulsa, OK 74145, (hereinafter referred to as "ASSIGNEE") is desirous of acquiring the entire right, title and interest of ASSIGNORS in and to the aforementioned invention and application, and in, to and under any and all Letters Patent of the United States and in any and all foreign countries issued thereon.

NOW, THEREFORE, this indenture witnesseth that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, ASSIGNORS, the inventors, have sold, assigned, transferred and set over and do hereby sell, assign, transfer and set over to ASSIGNEE, all of ASSIGNORS' right, title and interest in and to the above-referenced invention and application and any and all applications subsequently filed claiming the invention and/or the benefit of or priority to said application, divisions, continuations and continuations-in-part thereof, and any and all Letters Patent of the United States, its territorial possessions, and any and all foreign countries which may be granted therefor, and any and all extensions, reissues or certificates of reexamination of such Letters Patent, including all rights of priority and the subject matter of any and all claims which may be obtained in every such patent, the same to be held and enjoyed by ASSIGNEE for its own use and benefit, and for the use and benefit of its successors, assigns or other legal representatives, to the end of the term or terms for which such Letters Patent are or may be granted, extended, reissued or reexamined as fully and entirely as the same would have been held and enjoyed by ASSIGNORS if this assignment had not been made.

AND, ASSIGNORS hereby authorize and request the Commissioner of Patents to issue any and all Letters Patent of the United States on the invention and from any and all divisions and continuations, extensions, reissues or reexaminations of any such application to ASSIGNEE, and hereby covenant that they have full right to convey the entire interest herein assigned, and that they have not executed and will not execute any agreement in conflict herewith.

AND, ASSIGNORS further hereby covenant and agree that they will, at any time, upon request and at the expense of ASSIGNEE, execute and deliver any and all papers that may be necessary or desirable to perfect the title to the invention and application and any Letters Patent as

PATENT
Dkt. No. 71927/11-031
Assignment
Page 2 of 2

may be granted therefor in ASSIGNEE, its successors, assigns, or other legal representatives, and that if ASSIGNEE, its successors, assigns, or other legal representatives shall desire to file any division or continuation application, or to secure an extension, reissue or reexamination of such Letters Patent, or to file a disclaimer relating thereto, will, upon request, sign all papers, make all rightful oaths, and do all requisite acts for the filing of such division, continuing, or reissue application, request for reexamination or disclaimer, without further compensation.

AND, ASSIGNORS further agree to communicate to ASSIGNEE, its successors, assigns, or other legal representatives, such facts relating to the invention disclosed in the present application or Letters Patent issuing therefrom as may be known, and to testify as to such facts in any interference or other litigation when requested to do so.

To comply with 37 CFR 3.21 for recordal of this Assignment, we hereby authorize and request the recording attorney to insert above the filing date and/or application serial number when they become known.

Executed by the undersigned on the date indicated.

_____    6/6/2011
JOHN RALPH McINTOSH                 Date

_____    6-6-2011
MELVIN C. REDMAN                    Date

_____    6/6/2011
NEAL WINSTON ZAHN                   Date

2649v1

# EXHIBIT 4

## Acknowledgement Receipt

The USPTO has received your submission at **18:16:02** Eastern Time on **15-JUN-2011** by Deposit Account: 060540.

$ **462** fee paid by e-Filer via *RAM* with Confirmation Number: 7017.

You have also pre-authorized the following payments from your USPTO Deposit Account:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)
Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

## eFiled Application Information

| | |
|---|---|
| EFS ID | 10308709 |
| Application Number | 13161288 |
| Confirmation Number | 5113 |
| Title | DISPLAY BOX |
| First Named Inventor | JOHN RALPH McINTOSH |
| Customer Number or Correspondence Address | 22206 |
| Filed By | James F. Lea III/Stacy Jenkins |
| Attorney Docket Number | 71928/11-036 |
| Filing Date | |
| Receipt Date | 15-JUN-2011 |
| Application Type | Utility under 35 USC 111 (a) |

## Application Details

| Submitted Files | Page Count | Document Description | File Size | Warnings |
|---|---|---|---|---|
| APPLICATION-DATA-SHEET.pdf | 5 | Application Data Sheet | 1031376 bytes | ◇ PASS |
| APPLICATION.pdf | 18 | | 699413 bytes | ◇ PASS |

| Document Description | Page Start | Page End |
|---|---|---|
| Specification | 1 | 10 |
| Claims | 11 | 17 |
| Abstract | 18 | 18 |

| | | | | |
|---|---|---|---|---|
| FIGURES.pdf | 5 | Drawings-only black and white line drawings | 431463 bytes | △ WARNINGS |

The page size in the PDF is too large. The pages should be 8.5 x 11 or A4. If this PDF is submitted, the pages will be resized upon entry into the Image File Wrapper and may affect subsequent processing

| | | | | |
|---|---|---|---|---|
| Declaration.pdf | 2 | Oath or Declaration filed | 128739 bytes | ◇ PASS |
| PowerofAttorney.pdf | 3 | Power of Attorney | 211290 bytes | ◇ PASS |



EXHIBIT

4

fee-info.pdf          2       Fee Worksheet (SB06)          33107 bytes   ◇ PASS

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

### New Applications Under 35 U.S.C. 111

If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

### National Stage of an International Application under 35 U.S.C. 371

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

### New International Application Filed with the USPTO as a Receiving Office

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

*If you need help:*

- *Call the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov for specific questions about Patent e-Filing.*
- *Send general questions about USPTO programs to the USPTO Contact Center (UCC) .*
- *If you experience technical difficulties or problems with this application, please report them via e-mail to Electronic Business Support or call 1 800-786-9199.*

PTO/SB/14 (11-08)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 71928/11-036 |
|---|---|---|
| | Application Number | |

| Title of Invention | DISPLAY BOX |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Applicant Information:

| Applicant 1 | | | | |
|---|---|---|---|---|
| Applicant Authority ⦿Inventor ○Legal Representative under 35 U.S.C. 117 ○Party of Interest under 35 U.S.C. 118 | | | | |
| Prefix | Given Name | Middle Name | Family Name | Suffix |
| | JOHN | RALPH | McINTOSH | |
| Residence Information (Select One) ⦿ US Residency ○ Non US Residency ○ Active US Military Service | | | | |
| City | Tulsa | State/Province | OK | Country of Residence | US |
| Citizenship under 37 CFR 1.41(b) | US | | | |
| Mailing Address of Applicant: | | | | |
| Address 1 | 3447 E. 76th Street | | | |
| Address 2 | | | | |
| City | Tulsa | | State/Province | OK |
| Postal Code | 74136 | Country | US | |

| Applicant 2 | | | | |
|---|---|---|---|---|
| Applicant Authority ⦿Inventor ○Legal Representative under 35 U.S.C. 117 ○Party of Interest under 35 U.S.C. 118 | | | | |
| Prefix | Given Name | Middle Name | Family Name | Suffix |
| | MELVIN | C. | REDMAN | |
| Residence Information (Select One) ⦿ US Residency ○ Non US Residency ○ Active US Military Service | | | | |
| City | Bentonville | State/Province | AR | Country of Residence | US |
| Citizenship under 37 CFR 1.41(b) | US | | | |
| Mailing Address of Applicant: | | | | |
| Address 1 | 1108 Northeast Thorn Hill Road | | | |
| Address 2 | | | | |
| City | Bentonville | | State/Province | AR |
| Postal Code | 72721 | Country | US | |

| Applicant 3 | | | | |
|---|---|---|---|---|
| Applicant Authority ⦿Inventor ○Legal Representative under 35 U.S.C. 117 ○Party of Interest under 35 U.S.C. 118 | | | | |
| Prefix | Given Name | Middle Name | Family Name | Suffix |
| | NEAL | WINSTON | ZAHN | |
| Residence Information (Select One) ⦿ US Residency ○ Non US Residency ○ Active US Military Service | | | | |
| City | Bixby | State/Province | OK | Country of Residence | US |

PTO/SB/14 (11-08)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 71928/11-036 |
|---|---|---|
| | Application Number | |

| Title of Invention | DISPLAY BOX |
|---|---|

| **Citizenship under 37 CFR 1.41(b)** | US | | | |
|---|---|---|---|---|
| **Mailing Address of Applicant:** | | | | |
| **Address 1** | 11713 S. 66th E. Ave. | | | |
| **Address 2** | | | | |
| **City** | Bixby | | **State/Province** | OK |
| **Postal Code** | 74008 | **Country** | US | |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.  `Add`

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐   An Address is being provided for the correspondence Information of this application.

| **Customer Number** | 22206 | |
|---|---|---|
| **Email Address** | patents@fellerssnider.com | `Add Email`  `Remove Email` |

## Application Information:

| Title of the Invention | DISPLAY BOX | | |
|---|---|---|---|
| Attorney Docket Number | 71928/11-036 | **Small Entity Status Claimed** | ☒ |
| Application Type | Nonprovisional | | |
| Subject Matter | Utility | | |
| Suggested Class (if any) | | Sub Class (if any) | |
| Suggested Technology Center (if any) | | | |
| Total Number of Drawing Sheets (if any) | 5 | Suggested Figure for Publication (if any) | |

## Publication Information:

☐   Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐   **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S. C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Enter either Customer Number or complete the Representative Name section below. If both sections are completed the Customer Number will be used for the Representative Information during processing.

| Please Select One: | ◉ Customer Number | ◯ US Patent Practitioner | ◯ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|

PTO/SB/14 (11-08)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 71928/11-036 |
|---|---|---|
| | Application Number | |

| Title of Invention | DISPLAY BOX |
|---|---|

| Customer Number | 22206 |
|---|---|

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application. Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78(a)(2) or CFR 1.78(a)(4), and need not otherwise be made part of the specification.

| Prior Application Status | | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | | | |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

## Foreign Priority Information:

This section allows for the applicant to claim benefit of foreign priority and to identify any prior foreign application for which priority is not claimed. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(a).

| Application Number | Country | Parent Filing Date (YYYY-MM-DD) | Priority Claimed |
|---|---|---|---|
| | | | ○ Yes  ⦿ No |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

## Assignee Information:

Providing this information in the application data sheet does not substitute for compliance with any requirement of part 3 of Title 37 of the CFR to have an assignment recorded in the Office.

**Assignee 1**

| If the Assignee is an Organization check here. | ☒ |
|---|---|

| Organization Name | WINSTON COMPANY, INC. |
|---|---|

**Mailing Address Information:**

| **Address 1** | 7704 East 38th Street | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Tulsa | **State/Province** | OK |
| **Country** | US | Postal Code | 74145 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee Data may be generated within this form by selecting the **Add** button.

## Signature:

A signature of the applicant or representative is required in accordance with 37 CFR 1.33 and 10.18. Please see 37 CFR 1.4(d) for the form of the signature.

PTO/SB/14 (11-08)
App...ed for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 71928/11-036 |
|---|---|---|
| | Application Number | |

| Title of Invention | DISPLAY BOX |
|---|---|

| Signature | /james f. lea, iii/ | | | Date (YYYY-MM-DD) | 2011-06-15 |
|---|---|---|---|---|---|
| First Name | JAMES F. | Last Name | LEA, III | Registration Number | 41143 |

This collection of information is required by 37 CFR 1.76.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

**U.S. PATENT**
**Dkt. No.: 71928/11-036**

## DISPLAY BOX

[0001]    FIELD OF THE INVENTION

[0002]    The invention relates to packaging and display of toys.  In particular, the display box of the invention enables a child to sit on a toy while a toy is in the display box to assist prospective purchasers assessing whether the toy is an appropriate size, and the display box is configured to be stacked with other display boxes so that, in combination, the stacked boxes assume an approximately rectangular box shape for ease of shipping and stacking.

[0003]    BACKGROUND OF THE INVENTION

[0004]    Battery powered ride-on toys are popular among small children.  Different sized ride-on toys are available that are suitable for children of different ages.   Due to conventional packaging, consumers are faced with the prospect of having to estimate the size of the toy inside, which can lead to purchase of an incorrectly sized toy for a particular child.

[0005]    "Try-me" packaging, wherein a consumer has an opportunity to manipulate the device prior to purchase, is one method of assisting the consumer in making correct purchasing decisions. However, packaging that allows a consumer to access a toy, particularly a large toy such as a ride-on vehicle, typically results in irregularly shaped packaging that can cause problems for shipping and stacking.

[0006]    One object of the invention is to provide packaging wherein a consumer may sit on a toy vehicle or otherwise access the toy without requiring that the toy be removed from the packaging.

## SUMMARY OF THE INVENTION

[0007]    A system for shipping and displaying a vehicle is disclosed.  In one embodiment, the vehicle is a child's ride-on toy having the appearance of a four-wheeler with an exposed seat. The system includes a display box having a vehicle receiving area.  The vehicle receiving area has a display area and an enclosed area.  The enclosed area is sized to receive a first, e.g., rear, portion of the vehicle.  The display area is sized to receive a second, e.g., front, portion of the vehicle, including the seat, for allowing a prospective purchaser to sit on the seat without removing the vehicle from the display box.  In a preferred embodiment, the vehicle receiving area defines a display surface that can accommodate product identifying information and graphics.

[0008]    An orienting member is preferably located within the vehicle receiving area.  The orienting member defines receptacles for receiving the vehicle, thereby orienting the vehicle within the display box in a desired configuration.  The receptacles may include a first wheel receptacle, a second wheel receptacle and an accessory receptacle, additional receptacles or a sub-combination of the above listed receptacles.

[0009]    The vehicle receiving area is defined by a bottom box panel, a front box panel, a right box panel and a left box panel.  The display area has an upper surface defined by an upper box panel.  The upper box panel is at a first height above the bottom box panel.  The front box panel has an upper surface at a second height above the bottom box panel, wherein the first height is greater than the second height so that the display surface is located above the vehicle for ease of

viewing while a portion of the display box defining the display area of the vehicle receiving area is of a lower height to facilitate viewing of the vehicle.

[0010]    For a preferred shipping method, a vehicle is affixed to a first display box: Wire ties are preferably used to secure the front axle of the first vehicle to a bottom panel of the first display box. A second vehicle is affixed to a second display box of the same shape and design as the first display box. Wire ties are preferably used to secure the front axle of the second vehicle to a bottom panel of the second display box. The second display box is inverted to be located above the first display box wherein a display end of the second display box is adjacent to a vehicle receiving end of the first display box, thereby forming a shipping combination.

[0011]    The bottom box panel, the front box panel, the right box panel and the left box panel of the first display box and of the second display box of the shipping combination define a rectangular shape of a partial enclosure for facilitating ease of shipping and stacking of the shipping combination. First and second disposable pillars are located between the first and second vehicles to support the two display boxes when combined to form the shipping combination. In a preferred embodiment, the pillars locate in foot receiving areas of the vehicles in the first and second display boxes.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0012]     Figure 1 is a right side plan view of the box of the invention showing a ride-on toy and child in phantom;

[0013]     Figure 2 is a front plan view of the box of FIG. 1 showing the toy in phantom and including shipping pillars;

[0014]     Figure 3 is a top view of the box of FIG. 1 shown in a disassembled configuration;

[0015]     Figure 4 is a top view of the box of FIG. 1 shown in a partially folded configuration;

[0016]     Figure 5 is a top view of the box of FIG. 1 in an assembled configuration;

[0017]     Figure 6 is a top view of the box of FIG. 1 in an assembled configuration with an orienting panel in place;

[0018]     Figure 7 is an exploded perspective view of the box of FIG. 1;

[0019]     Figure 8 is a perspective view of the box of FIG. 1; and

[0020]     Figure 9 is an elevation view of a first box stacked in combination with a second box to assume a rectangular configuration.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

[0021]    Referring now to Figures 1 through 9, shown is a display box designated generally **10**. Display box **10** includes a bottom box panel **12** defined by front fold **14**, rear fold **16**, right fold **18**, and left fold **20**. Front fold **14** defines front tab receiving slots **22**. Right fold **18** defines right tab receiving slots **24**. Left fold **20** defines left tab receiving slots **26**.

[0022]    A rear bottom surface attachment **28** extends from rear fold **16** of bottom box panel **12**. A front box exterior panel **30** has a top surface **32**. Front box exterior panel **30** has a bottom surface **34** adjacent to front fold **14** of bottom box panel **12**.

[0023]    A front box interior panel **36** has a top surface **38** that is hingedly affixed to top surface **32** of front box exterior panel **30**. Front box interior panel **36** has a bottom surface **40** having front tabs **42** extending therefrom for locating in front tab receiving slots **22**. Front box exterior panel **30** is on a vehicle receiving end of display box **10**.

[0024]    A right box panel **44** has a bottom surface **46** hingedly affixed to right fold **18**. Right box panel **44** has a right outer box surface **48** having a bottom edge **50** affixed to right fold **18**. Right outer box surface **48** has a right angled first upper surface fold **52**, a right angled second upper surface fold **54**, right top fold **56**, right front fold **58**, and right rear fold **60**. Right inner box panel **62** has a bottom edge **64** and an upper edge **66** hingedly affixed to right box panel **44** at angle first upper surface fold **52**. Right inner box panel **62** has front tabs **68** on bottom edge **64** for inserting right tab receiving slots **24**. Right inner display surface panel **70** is hingedly affixed to right box panel **44** at right angled second upper surface fold **54**. Right inner display surface panel **70** defines a right upper tab receiving slot **72**. Right inner upper member **74** has front edge **76** and inner edge **78** and is hingedly affixed to right top fold **56**. Right inner forward

facing display surface member **80** is hingedly affixed at front edge **76** of right inner upper member **74**. Right box panel **44**, front box interior panel **36**, left box panel **94** and bottom box panel **12** define a display area of a vehicle receiving area.

[0025]     Right inner rear panel **82** is hingedly affixed to right rear fold **60**. Right front tab inner fold member **84** is hingedly affixed to right front fold **58**. Right front tab **86** extends from right front tab inner fold member **84** for insertion into front tab receiving slot **22**.

[0026]     A left box panel **94** has a bottom surface **96** hingedly affixed to left fold **20**. Left box panel **94** has a left outer box surface **98** having a bottom edge **100** affixed to left fold **68**. Left outer box surface **98** has a left angled first upper surface fold **102**, a left angled second upper surface fold **104**, left top fold **106**, left front fold **108**, and left rear fold **110**. Left inner box panel **112** has a bottom edge **114** and an upper edge **116** hingedly affixed to left box panel **94** at angle first upper surface fold **102**. Left inner box panel **112** has front tabs **118** on bottom edge **114** for inserting left tab receiving slots **26**. Left inner display surface panel **120** is hingedly affixed to left box panel **94** at left angled second upper surface fold **104**. Left inner display surface panel **120** defines a left upper tab receiving slot **122**. Left inner upper member **124** has front edge **126** and inner edge **128** and is hingedly affixed to left top fold **106**. Left inner forward facing display surface member **130** is hingedly affixed at front edge **126** of left inner upper member **124**. Left inner rear panel **132** is hingedly affixed to left rear fold **110**.

[0027]     Left front tab inner fold member **134** is hingedly affixed to left front fold **108**. Left front tab **135** extends from left front tab inner fold member **134** for insertion into front tab receiving slot **22**.

[0028]    Rear box panel **136** has bottom edge **138** affixed to rear bottom surface attachment **28**. Rear box panel **136** has rear box surface **140**. Rear box surface **140** has top edge **142** and bottom edge **144** affixed to rear bottom surface attachment **28**. Upper box panel **146** has front edge **148** and rear edge **150**. Rear edge **150** is affixed to top edge **142** of rear box panel **136**. Forward facing display panel **152** has right edge **154** that defines right upper tab **156** for locating in right upper tab receiving slot **72**. Forward facing display surface **152** has left edge **158** that defines a left upper tab **160** for locating in left upper tab receiving slot **122**. Forward facing display surface **152** has bottom edge **162** and a top edge **164** that is hingedly affixed to front edge **148** of upper box surface **146**. Forward facing interior panel **166** is hingedly affixed to bottom edge **162** of forward facing display surface **152**. Right box panel **44**, rear box panel **136**, left box panel **94** and forward facing display surface **152** define an enclosed portion of a vehicle receiving area. Rear body panel **136** is on a display end of display box **10**.

[0029]    An orienting member designated generally **168** has horizontal panel **170**. Horizontal panel **170** has a front edge **172**, rear edge **174**, right edge **176**, and left edge **178**. Front vertical panel **180** is hingedly affixed to front edge **172**. Rear vertical panel **182** is hingedly affixed to rear edge **174**. Right vertical panel **184** is hingedly affixed to right edge **176**. Left vertical panel **186** is hingedly affixed to left edge **178**. Horizontal panel **170** defines first wheel receiving orifice **188**, second wheel receiving orifice **190** and accessory receiving orifice **192**. Horizontal panel **170** has a width and a length that is less than a width and a length of bottom box panel **12**.

[0030]    To construct display box **10**, rear box panel **136** is secured to rear bottom surface attachment **28**. Right box panel **44** and left box panel **94** are folded about right fold **18** and left fold **20**, respectively, to orient panels **44** and **94** vertically.

[0031]     Right inner box surface 62 is folded about right angled first upper surface fold 52 and right front tabs 68 are inserted in right tab receiving slots 24.   Left inner box surface 112 is folded about left angled first upper surface fold 102 and left front tabs 118 are inserted in left tab receiving slots 26.

[0032]     Right front inner tab fold member 84 is folded about right front fold 58 so that right front tab 86 may be inserted in front tab receiving slot 22.  Left front inner tab fold member 134 is folded about left front fold 108 so that left front tab 136 may be inserted in front tab receiving slot 22.  Front box exterior panel 30 is then folded about front fold 14 to a vertical orientation. Front box interior panel 36 is then folded at top surface 32 of front box exterior panel 30 to enclose inner tab fold members 84 and 134 between front box exterior panel 30 and front box interior panel 36.  Front tabs 42, extending from bottom surface 46 of front box interior panel 36, are inserted in front tab receiving slots 22, thereby forming a sturdy front box surface.

[0033]     Right inner display surface panel 70 is folded about right angled second upper surface fold 54.  Left inner display surface panel 120 is folded about left angled second upper surface fold 104.  Right inner rear fold panel 82 is then folded inwardly about rear right fold 60.  Left inner rear fold panel 132 is then folded inwardly about rear left fold 110.  Right inner upper member 74 and attached inner front facing display surface 80 are folded inwardly about right top fold 56.  Left inner upper member 124 and attached inner front facing display surface 130 are folded inwardly about left top fold 106.

[0034]     Rear box surface 136 is then folded about rear fold 16 to a vertical orientation.  Upper box surface 146 is folded about top edge 150 and front facing display surface 152 is folded about front edge 148.  Right upper tab 156 is inserted within right upper tab receiving slot 72.  Left

upper tab **160** is received in left upper tab receiving slot **122**. Forward facing interior panel **166** is then folded about bottom edge **162** of front facing display surface **152**, thereby completing an upper portion of the box assembly and assembly of display box **10**.

[0035]   Orienting member **168** is then assembled by folding front vertical panel **180** downwardly about front edge **172** of horizontal panel **170** to a vertical orientation. Rear vertical panel **182** is folded downwardly about rear edge **174** to a vertical orientation. Right vertical panel **184** is folded downwardly about right edge **176** to a vertical orientation. Left vertical panel **186** is folded downwardly about left edge **178** to a vertical orientation.

[0036]   Orienting member **168** may then be located within a receiving area defined by display box **10**, wherein bottom edges of vertical panels **180**, **182**, **184**, and **186** are supported by bottom box panel **12**. Front vertical panel **180** is located adjacent to front box interior panel **36**. Right vertical panel **184** is located adjacent to right inner box surface **62**. Left vertical panel **186** is located adjacent to left inner box surface **112**.

[0037]   Orienting member **168** may then receive a ride-on toy such as ride-on toy **200**. In particular, a right front wheel of a ride-on toy may be received in first wheel receiving orifice **188** and a left front wheel of a ride-on toy may be received in second wheel receiving orifice **190**. A battery or other component may be received in a accessory receiving orifice **192**. Preferably, ride-on toy **200** is secured to bottom of box panel **12** of display box **10** with wire ties that are affixed to a front axle of toy **200**.

[0038]   As shown in Figure 1, after locating ride on toy **200** in display box **10**, ride on toy seat **202** and foot rest **204** of foot rests **204**, **206** are visible and accessible in front of forward facing

display surface **152**. Therefore, a child can sit on seat **202** of ride on toy **200** so that prospective purchasers can assess whether toy **200** is the appropriate size for the child.

[0039]    Additionally, the design of display box **10** facilitates uniform stacking when shipped with disposable pillars **300** (Figs. 2 and 9).   Pillars **300** are preferably constructed of an inexpensive and light weight material, such as styrofoam.  Pillars **300** are preferably sized to be received on foot rests, **204, 206** so that display boxes **10** and toys **200** can be stacked on upon another, which results in an approximately rectangular box shape **302** of the shipping combination as shown in Fig. 9.  In addition to pillars **300** engaging foot rests **204, 206** of first toy **200** and foot rests **204', 206',** of a second toy **200'**, front edge **148** of display box **10** engages a second toy **200'** and front edge **148'** of second display box **10'** engages first toy **200** (FIG. 9). Additionally, handlebars **208** of first toy **200** engage seat **202'** of second toy **200'** and handlebars **208'** of second toy **200'** engage seat **202** of first toy **200** to provide a stable shipping platform. After shipping, pillars **300** are removed and discarded.

*    *    *    *

[0040]    Thus, the present invention is well adapted to carry out the objectives and attain the ends and advantages mentioned above as well as those inherent therein.   While presently preferred embodiments have been described for purposes of this disclosure, numerous changes and modifications will be apparent to those of ordinary skill in the art.   Such changes and modifications are encompassed within the spirit of this invention as defined by the claims.

CLAIMS

What is claimed is:

1.      A system for shipping and displaying a vehicle having a seat, said system comprising:

        a display box having a vehicle receiving area;

        said vehicle receiving area having a display area and an enclosed area;

        wherein said enclosed area is sized to receive a portion of the vehicle; and

        wherein said display area is sized to receive a portion of the vehicle, including the

seat, for allowing a prospective purchaser to sit on the seat.


2.      The system according to claim 1 wherein:

        said vehicle receiving area defines a display surface.


3.      The system according to claim 1 further comprising:

        an orienting member received within said vehicle receiving area, said orienting

member having receptacles for receiving the vehicle.


4.      The system according to claim 3 wherein:

        said receptacles include at least one of a first wheel receptacle, a second wheel

receptacle and an accessory receptacle.

5.    The system according to claim 1 wherein:

said vehicle receiving area is defined by a bottom box panel, a front box panel, a right box panel and a left box panel; and

said display area has an upper surface defined by an upper box panel.

6.    The system according to claim 5 wherein:

said upper box panel is at a first height above said bottom box panel;

wherein said front box panel has an upper surface at a second height above said bottom box panel; and

wherein said first height is greater than said second height.

7.    The system according to claim 5 further comprising:

the vehicle is a first vehicle and the display box is a first display box;

a first vehicle affixed to said first display box;

a second display box having a second vehicle affixed thereto;

wherein said first display box has a front panel and a rear panel;

wherein said second display box has a front panel and a rear panel;

wherein said second display box is inverted to be located above said first display box and to have a display end adjacent to a vehicle receiving end of said first display box, thereby forming a shipping combination;

wherein said bottom box panel, said front box panel, said right box panel and said left box panel of said first display box and of said second display box of said shipping

combination define a rectangular shape of a partial enclosure for facilitating ease of shipping and stacking of said shipping combination.

8.    The system according to claim 7 wherein:

said first vehicle defines first right pillar receiving area and first left pillar receiving area;

said second vehicle defines second right pillar receiving area and second left pillar receiving area; and further comprising:

a right pillar engaging said first right pillar receiving area and said second right pillar receiving area;

a left pillar engaging said first left pillar receiving area and said second left pillar receiving area; and

wherein said right pillar and said left pillar provide support to assist in maintaining said rectangular shape of said partial enclosure of said shipping combination.

9.    A method of packaging a toy vehicle comprising the steps of:

locating a vehicle having a seat in a vehicle receiving area of a display box, said vehicle receiving area having a display area and an enclosed area;

wherein a portion of said vehicle is located in said enclosed area; and

wherein a portion of said vehicle, including said seat, is located in said display area,  for allowing a prospective purchaser to sit on said seat.

10.    The method according to claim 9 further comprising the steps of:

      locating an orienting member within said vehicle receiving area;

      locating portions of said vehicle in receptacles defined by said orienting member.

11.    The method according to claim 10 wherein:

      said portions of said vehicle include a first wheel and a second wheel.

12.    The method according to claim 9 further comprising the steps of:

      locating a second vehicle in a second display box;

      wherein said display box is a first display box having a front panel and a rear panel;

      wherein said second display box has a front panel and a rear panel;

      inverting said second display box;

      orienting said second display box above said first display box so that a display end of said second display box is adjacent to a vehicle receiving end of said first display box;

      wherein a bottom box panel, said front panel, a right box panel and a left box panel of said first display box and of said second display box in combination define a shipping combination having a rectangular shape for facilitating ease of shipping and stacking of said shipping combination.

13.     The display box according to claim 12 wherein:

locating a first end of a right pillar in a first right pillar receiving area defined by said vehicle;

locating a second end of a right pillar in a second right pillar receiving area defined by said second vehicle;

locating a first end of a left pillar in a first left pillar receiving area defined by said vehicle;

locating a second end of a left pillar in a second left pillar receiving area defined by said second vehicle; and

wherein said right pillar and said left pillar provide support to assist in maintaining said rectangular shape of said shipping combination.

14.     A method of shipping pairs of vehicles containing irregularly shaped containers comprising the steps of:

locating a first vehicle in a first irregularly shaped box;

locating a second vehicle in a second irregularly shaped box;

positioning a first end of a first disposable pillar in said first irregularly shaped box;

positioning a first end of a second disposable pillar in said first irregularly shaped box;

inverting said second irregularly shaped box;

receiving a second end of said first disposable pillar in said second irregularly shaped box;

receiving a second end of said second disposable pillar in said second irregularly shaped box; and

wherein said first irregularly shaped display box and said second irregularly shaped box in combination define a shipping combination having a rectangularly shaped partial enclosure for facilitating ease of shipping and stacking of said shipping combination.

15. The method according to claim 14 wherein:

said step of positioning said first end of said first disposable pillar in said first irregularly shaped box includes positioning said first end of said first disposable pillar on a first pillar receiving area defined by said first vehicle;

said step of positioning said first end of said second disposable pillar in said first irregularly shaped box includes positioning said first end of said second disposable pillar on a second pillar receiving area defined by said first vehicle;

said step of receiving said second end of said first disposable pillar in said second irregularly shaped box includes locating said second end of said first disposable pillar on a first left pillar receiving area defined by said second vehicle;

said step of receiving said second end of said second disposable pillar in said second irregularly shaped box includes locating said second end of said second disposable pillar on a second pillar receiving area defined by said second vehicle.

16.    The method according to claim 15 wherein:

said first pillar receiving area of said first vehicle is a first right foot rest;

said second pillar receiving area of said first vehicle is a first left foot rest;

said first pillar receiving area of said second vehicle is a second right foot rest;

said second pillar receiving area of said second vehicle is a second left foot rest.

## ABSTRACT OF THE DISCLOSURE

A system for shipping and displaying a vehicle is disclosed. A display box includes a vehicle receiving area that has a display area and an enclosed area so that when the vehicle is located in the display box a prospective purchaser can sit on the seat. For shipping a vehicle is affixed to a first display box and a second vehicle is affixed to a second display box. The second display box is inverted and reversed and is located above the first display box to form a rectangularly shaped shipping combination. First and second disposable pillars are located between the first and second vehicles to support the two display boxes when combined to form the shipping combination. In a preferred embodiment, the pillars locate in foot receiving areas of the vehicles in the first and second display boxes.



1/5

Fig. 1

Fig. 2

2/5



Fig. 3



3/5

Fig. 4

Fig. 5

Fig. 6



4/5

Fig. 7

Fig. 8

5/5



*Fig. 9*

PTO/SB/01A (01-09)
Approved for use through 09/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | DISPLAY BOX |
|---|---|

As the below named inventor(s), I/we declare that:

This declaration is directed to:

[X]  The attached application, or

[ ]  Application No. _____, filed on _____,

  [ ]  as amended on _____ (if applicable);

I/we believe that I/we am/are the original and first inventor(s) of the subject matter which is claimed and for which a patent is sought;

I/we have reviewed and understand the contents of the above-identified application, including the claims, as amended by any amendment specifically referred to above;

I/we acknowledge the duty to disclose to the United States Patent and Trademark Office all information known to me/us to be material to patentability as defined in 37 CFR 1.56, including for continuation-in-part applications, material information which became available between the filing date of the prior application and the national or PCT International filing date of the continuation-in-part application.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

All statements made herein of my own knowledge are true, all statements made herein on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. 1001, and may jeopardize the validity of the application or any patent issuing thereon.

FULL NAME OF INVENTOR(S)

Inventor one: JOHN RALPH McINTOSH     Date: 6/6/2011

Signature: J.C. Ralph M Intosh     Citizen of: US

Inventor two: MELVIN C. REDMAN     Date: _____

Signature: Melvin C. Redman     Citizen of: US

[X]  Additional inventors or a legal representative are being named on 1 additional form(s) attached hereto.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

FULL NAME OF ADDITIONAL INVENTOR(S)

Inventor three: NEAL WINSTON ZAHN          Date: 6/6/2011

Signature: _____          Citizen of: US

Inventor four: _____          Date: _____

Signature: _____          Citizen of: _____

Inventor five: _____          Date: _____

Signature: _____          Citizen of: _____

Inventor six: __          Date: _____

Signature: _____          Citizen of: _____

Inventor seven: __          Date: _____

Signature: _____          Citizen of: _____

Inventor eight: __          Date: _____

Signature: _____          Citizen of: _____

Inventor nine: __          Date: _____

Signature: _____          Citizen of: _____

Inventor ten: __          Date: _____

Signature: _____          Citizen of: _____

| | |
|---|---|
| **POWER OF ATTORNEY** **and** **CORRESPONDENCE ADDRESS INDICATION FORM** | **Application Number** ~~e assigned |
| | **Filing Date** Herewith |
| | **First Named Inventor** McINTOSH |
| | **Title** DISPLAY BOX |
| | **Art Unit** |
| | **Examiner Name** |
| | **Attorney Docket Number** 71928/11-036 |

I hereby revoke all previous powers of attorney given in the above-identified application.

I hereby appoint:

[X] Practitioners associated with the Customer Number:     22206

*OR*

[ ] Practitioner(s) named below:

| Name | Registration Number |
|---|---|
| | |
| | |

as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith.

Please recognize or change the correspondence address for the above-identified application to:

[X] The address associated with the above-mentioned Customer Number:

*OR*

[ ] The address associated with Customer Number:

□ *OR*

| Firm or Individual Name | |
|---|---|
| Address | |
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Fax |

I am the:

[ ] Applicant/Inventor

[X] Assignee of record of the entire interest.  See 37 CFR 3.71.
    *Statement under 37 CFR 3.73(b) is included below.*

**STATEMENT UNDER 37 CFR 3.73 (b):**

WINSTON COMPANY, INC. states that it is the Assignee of Entire Right, Title, and Interest in the patent application/patent identified above by virtue of an Assignment from the inventor(s) of the patent application/patent identified above. A copy of the Assignment is attached and/or was recorded in the U.S. Patent and Trademark Office at Reel _____, Frame _____. The undersigned (whose title is supplied below) is empowered to sign this statement on behalf of the Assignee.

**SIGNATURE of Applicant or Assignee of Record**

| Signature | *[signature]* | Date | 6/6/2011 |
|---|---|---|---|
| Name | NEAL WINSTON BAHN | Telephone | 918·610·1006 |
| Title and Company | PRESIDENT , Winston Company, Inc. | | |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required.  Submit multiple forms if more than one signature is required, see below*.

[X] *Total of  1  forms is/are submitted.

This collection of information is required by 37 CFR 1.31 and 1.33.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14.  This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.  SEND TO: **Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.**  2647v1

## ASSIGNMENT

WHEREAS, JOHN RALPH McINTOSH, whose address is 3447 E. 76th Street, Tulsa, Oklahoma 74136; MELVIN C. REDMAN, whose address is 1108 Northeast Thorn Hill Road, Bentonville, Arkansas 72721; and NEAL WINSTON ZAHN, whose address is 11713 S. 66th E. Ave., Bixby, Oklahoma 74008 (hereinafter referred to as "ASSIGNORS") are coinventors of a certain new and useful invention entitled "DISPLAY BOX" which is described and claimed in the United States patent application filed _____, 2011, and assigned Application Serial No. 13/_____; and

WHEREAS, WINSTON COMPANY, INC., an Oklahoma corporation located at 7704 East 38th Street, Tulsa, OK 74145, (hereinafter referred to as "ASSIGNEE") is desirous of acquiring the entire right, title and interest of ASSIGNORS in and to the aforementioned invention and application, and in, to and under any and all Letters Patent of the United States and in any and all foreign countries issued thereon.

NOW, THEREFORE, this indenture witnesseth that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, ASSIGNORS, the inventors, have sold, assigned, transferred and set over and do hereby sell, assign, transfer and set over to ASSIGNEE, all of ASSIGNORS' right, title and interest in and to the above-referenced invention and application and any and all applications subsequently filed claiming the invention and/or the benefit of or priority to said application, divisions, continuations and continuations-in-part thereof, and any and all Letters Patent of the United States, its territorial possessions, and any and all foreign countries which may be granted therefor, and any and all extensions, reissues or certificates of reexamination of such Letters Patent, including all rights of priority and the subject matter of any and all claims which may be obtained in every such patent, the same to be held and enjoyed by ASSIGNEE for its own use and benefit, and for the use and benefit of its successors, assigns or other legal representatives, to the end of the term or terms for which such Letters Patent are or may be granted, extended, reissued or reexamined as fully and entirely as the same would have been held and enjoyed by ASSIGNORS if this assignment had not been made.

AND, ASSIGNORS hereby authorize and request the Commissioner of Patents to issue any and all Letters Patent of the United States on the invention and from any and all divisions and continuations, extensions, reissues or reexaminations of any such application to ASSIGNEE, and hereby covenant that they have full right to convey the entire interest herein assigned, and that they have not executed and will not execute any agreement in conflict herewith.

AND, ASSIGNORS further hereby covenant and agree that they will, at any time, upon request and at the expense of ASSIGNEE, execute and deliver any and all papers that may be necessary or desirable to perfect the title to the invention and application and any Letters Patent as

PATENT
Dkt. No. 71928/11-036
Assignment
Page 2 of 2

may be granted therefor in ASSIGNEE, its successors, assigns, or other legal representatives, and that if ASSIGNEE, its successors, assigns, or other legal representatives shall desire to file any division or continuation application, or to secure an extension, reissue or reexamination of such Letters Patent, or to file a disclaimer relating thereto, will, upon request, sign all papers, make all rightful oaths, and do all requisite acts for the filing of such division, continuing, or reissue application, request for reexamination or disclaimer, without further compensation.

AND, ASSIGNORS further agree to communicate to ASSIGNEE, its successors, assigns, or other legal representatives, such facts relating to the invention disclosed in the present application or Letters Patent issuing therefrom as may be known, and to testify as to such facts in any interference or other litigation when requested to do so.

To comply with 37 CFR 3.21 for recordal of this Assignment, we hereby authorize and request the recording attorney to insert above the filing date and/or application serial number when they become known.

Executed by the undersigned on the date indicated.

_____     6/6/2011
JOHN RALPH McINTOSH                  Date

_____     6-6-2011
MELVIN C. REDMAN                     Date

_____     6/6/2011
NEAL WINSTON ZAHN                    Date

2648v1

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | DISPLAY BOX |
| **First Named Inventor/Applicant Name:** | JOHN RALPH McINTOSH |
| **Filer:** | James F. Lea III/Stacy Jenkins |
| **Attorney Docket Number:** | 71928/11-036 |

Filed as Small Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 82 | 82 |
| Utility Search Fee | 2111 | 1 | 270 | 270 |
| Utility Examination Fee | 2311 | 1 | 110 | 110 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | 462 |

# EXHIBIT 5

PATENT
Dkt. No. 71928/11-036
Assignment
Page 1 of 2

## ASSIGNMENT

WHEREAS, JOHN RALPH McINTOSH, whose address is 3447 E. 76th Street, Tulsa, Oklahoma 74136; MELVIN C. REDMAN, whose address is 1108 Northeast Thorn Hill Road, Bentonville, Arkansas 72721; and NEAL WINSTON ZAHN, whose address is 11713 S. 66th E. Ave., Bixby, Oklahoma 74008 (hereinafter referred to as "ASSIGNORS") are coinventors of a certain new and useful invention entitled "DISPLAY BOX" which is described and claimed in the United States patent application filed ___June 15_____, 2011, and assigned Application Serial No. 13/__161,288_____; and

WHEREAS, WINSTON COMPANY, INC., an Oklahoma corporation located at 7704 East 38th Street, Tulsa, OK 74145, (hereinafter referred to as "ASSIGNEE") is desirous of acquiring the entire right, title and interest of ASSIGNORS in and to the aforementioned invention and application, and in, to and under any and all Letters Patent of the United States and in any and all foreign countries issued thereon.

NOW, THEREFORE, this indenture witnesseth that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, ASSIGNORS, the inventors, have sold, assigned, transferred and set over and do hereby sell, assign, transfer and set over to ASSIGNEE, all of ASSIGNORS' right, title and interest in and to the above-referenced invention and application and any and all applications subsequently filed claiming the invention and/or the benefit of or priority to said application, divisions, continuations and continuations-in-part thereof, and any and all Letters Patent of the United States, its territorial possessions, and any and all foreign countries which may be granted therefor, and any and all extensions, reissues or certificates of reexamination of such Letters Patent, including all rights of priority and the subject matter of any and all claims which may be obtained in every such patent, the same to be held and enjoyed by ASSIGNEE for its own use and benefit, and for the use and benefit of its successors, assigns or other legal representatives, to the end of the term or terms for which such Letters Patent are or may be granted, extended, reissued or reexamined as fully and entirely as the same would have been held and enjoyed by ASSIGNORS if this assignment had not been made.

AND, ASSIGNORS hereby authorize and request the Commissioner of Patents to issue any and all Letters Patent of the United States on the invention and from any and all divisions and continuations, extensions, reissues or reexaminations of any such application to ASSIGNEE, and hereby covenant that they have full right to convey the entire interest herein assigned, and that they have not executed and will not execute any agreement in conflict herewith.

AND, ASSIGNORS further hereby covenant and agree that they will, at any time, upon request and at the expense of ASSIGNEE, execute and deliver any and all papers that may be necessary or desirable to perfect the title to the invention and application and any Letters Patent as



EXHIBIT

5

may be granted therefor in ASSIGNEE, its successors, assigns, or other legal representatives, and that if ASSIGNEE, its successors, assigns, or other legal representatives shall desire to file any division or continuation application, or to secure an extension, reissue or reexamination of such Letters Patent, or to file a disclaimer relating thereto, will, upon request, sign all papers, make all rightful oaths, and do all requisite acts for the filing of such division, continuing, or reissue application, request for reexamination or disclaimer, without further compensation.

AND, ASSIGNORS further agree to communicate to ASSIGNEE, its successors, assigns, or other legal representatives, such facts relating to the invention disclosed in the present application or Letters Patent issuing therefrom as may be known, and to testify as to such facts in any interference or other litigation when requested to do so.

To comply with 37 CFR 3.21 for recordal of this Assignment, we hereby authorize and request the recording attorney to insert above the filing date and/or application serial number when they become known.

Executed by the undersigned on the date indicated.


JOHN RALPH McINTOSH                    6/6/2011
                                       Date


MELVIN C. REDMAN                       6-6-2011
                                       Date


NEAL WINSTON ZAHN                      6/6/2011
                                       Date


2648v1

# EXHIBIT 6



# EXHIBIT 7



# EXHIBIT 8



# EXHIBIT 9



```
              ( 918 ) 394 - 4000
          MANAGER GARY KRAMME
          10938 S MEMORIAL DR
             TULSA OK 74133
    ST# 1597 OP# 00005417 TE# 73 TR# 01078
    RIDE ON        085000800421        59.87 X
    KIT KAT SNK    003400008752 F       2.68 X
    KIT KAT SNK    003400008752 F       2.68 X
    101 GRAND FS   002800052060 F       2.68 X
    MARS SNCKR F   004000015140 F       2.68 X
    MARS SNCKR F   004000015140 F       2.68 X
                      SUBTOTAL          73.27
        TAX 1   8.617 %                  6.24
                         TOTAL          79.51
                    MCARD TEND          79.51

    ACCOUNT #       **** **** **** 2360  S
    APPROVAL # 21411P
    REF # 230500184453
    TERMINAL # 14000163

        10/31/12        14:21:06
```



```
      CHANGE DUE              0.00

   # ITEMS SOLD 6
```

# EXHIBIT 10

# MITCHELL ‖ WILLIAMS

| 425 West Capitol Avenue, Suite 1800 | 5414 Pinnacle Point Drive, Suite 500 | 106 East Sixth Street, Suite 300 |
|---|---|---|
| Little Rock, AR 72201-3525 | Rogers, AR 72758-8131 | Austin, TX 78701-3661 |
| Telephone 501-688-8800 | Telephone 479-464-5650 | Telephone 512-480-5100 |
| Fax 501-688-8807 | Fax 479-464-5680 | Fax 512-322-0301 |

MR. NEAL ZAHN
WINSTON COMPANY, INC.
7704 EAST 38TH STREET
TULSA, OK 74145-3211

AUGUST 5, 2011

INVOICE NO. 1032883

CLIENT NO. 015778-0002

(PLEASE DETACH THIS PORTION AND RETURN WITH YOUR PAYMENT)

## A C C O U N T   S U M M A R Y

RE:  WINSTON COMPANY, INC. VS. RAND INTERNATIONAL LEISURE
     PRODUCTS, LLC

LEGAL SERVICES PERFORMED ............... 157.50

TOTAL AMOUNT DUE ........................ 157.50

| Name | Init. | Position | Rate | Hours | Amount |
|---|---|---|---|---|---|
| J. G. DREWYOR | JGD | Partner | 225.00 | 0.70 | 157.50 |
| | | | | | ---------- |
| | | | | | 157.50 |

CUMULATIVE FEES:    1,693.50    CUMULATIVE EXPENSES:    360.00

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C. ❘ ATTORNEYS AT LAW
LITTLE ROCK • ROGERS • AUSTIN ❘ MITCHELLWILLIAMSLAW.COM

EMPLOYER IDENTIFICATION
NO. 71-0261429



EXHIBIT
10

BALANCE PAYABLE UPON RECEIPT UNLESS PRIOR ARRANGEMENTS HAVE BEEN MADE
PLEASE REMIT TO THE LITTLE ROCK OFFICE

*MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD*

MR. NEAL ZAHN                                   FILE 015778-0002      PAGE      2

RE:   WINSTON COMPANY, INC. VS. RAND INTERNATIONAL LEISURE
      PRODUCTS, LLC

07/05/11 JGD TELEPHONE CONFERENCE WITH MEL REDMAN              .20    45.00
             REGARDING TERMINATION OF WINSTON TEAMING
             AGREEMENT AND PAYMENTS DUE THEREUNDER

07/05/11 JGD REVIEW TEAMING AGREEMENT; SUMMARIZE AND          .40    90.00
             ADVISE CLIENT REGARDING WINSTON'S OBLIGATIONS
             TO MAKE DISTRIBUTIONS AFTER TERMINATION OF
             AGREEMENT; E-MAIL FOLLOW UP TO MEL REDMAN

07/06/11 JGD OFFICE CONFERENCE WITH CHRIS ROGERS REGARDING    .10    22.50
             EXPANSION OF BUSINESS OPPORTUNITIES WITH
             WINSTON INT'L AFFILIATES